United States District Court
Southern District of Texas
**ENTERED**
April 20, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-16-186 |
| | § | CIVIL ACTION NO. H-19-3239 |
| ANTONIO RASHEED BENJAMIN, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Antonio Rasheed Benjamin's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 120), and Memorandum in Support (Document No. 121),[1] the United States' Response and Motion for Summary Judgment (Document No. 127), and Movant's Reply. (Document No. 130).   After reviewing the pleadings, the record of the proceedings before the District Court and Fifth Circuit United States Court of Appeals in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Antonio Rasheed Benjamin's § 2255 Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

**I.     Procedural History**

Movant Antonio Rasheed Benjamin ("Benjamin") who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.

---

[1] Antonio Rasheed Benjamin's  Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-19-3239 and at Document No. 120 in Criminal Action No. H-16-186. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

This is Benjamin's first attempt at § 2255 relief.

Benjamin was initially charged in a one count Indictment with sex trafficking a minor in violation of 18 U.S.C. § 1591(a) and (b)(1) and (b)(2). (Document No. 11). On November 16, 2016, he was charged in a Superseding Indictment with two counts of sex trafficking in minors. (Document No. 25). On March 8, 2017, a three-count Second Superseding Indictment charged Benjamin with two counts of sex trafficking minors in violation of § 1951(a) and (b)(1) and (b)(2) (Counts one and two), and one count of sex trafficking in violation of 18 U.S.C. § 1591(a) and (b)(1) (Count three). (Document No. 32). The record shows that Benjamin was set for a Rearraignment on March 21, 2017, but opted to proceed to trial, after being advised on the record about the benefits of the plea that had been negotiated versus going to trial. Specifically, Benjamin was advised as follows:

Mr. Martinez: Your Honor, we were set for a rearraignment. My client has had second thoughts. I think he is still wavering a little bit.

I just wanted to put on the record, so he will know, what I think are the benefits of the plea versus his right to go to trial if he so chooses. I just want to make sure everything is understood on the record and just for future references.

I've advised my client — and he is sitting over here in the jury box — I have advised him that a plea bargain is going to give him, is going to remove the minimum mandatory from 15 to 10. That doesn't mean he will get less than 15, but at least it gives him a chance to do less than 15, but in no way can he do less than 10.

But he's got a 5 — and, of course, he can do more than even the 15, regardless of what he does, depending on what you feel, but he has a chance at less than 15.

In addition, he is going to get the three points acceptance of responsibility, and he is also going to get the potential for other enhancements that may not apply. And I've advised all that to him. They're also going to drop one of the counts that might hurt him in the long run.

And based on all that, I have gone over the evidence with him that he should consider the plea bargain. In fact, I kind of advised that he take it.

But I have also told him all along that he doesn't have to take it, that he can go to trial and everyone will understand and respect that right.

So I wanted the record to show and let him decide once and for all, first, that I have advised him what the plea bargain is, what the elements of the offense are. I have gone over it with him, and make his decision in front of you so that everything will be clear for the record.

The Court: Okay.

Mr. Martinez: That's what I am doing.

The Court: All right.

Mr. Benjamin, would you come down, please. You have heard what Mr. Martinez has said. Is that a correct assessment of what he has told you earlier about whether you should enter a plea of guilty or not?

The Defendant: Yes, ma'am.

The Court: All right. And you understand, of course, you don't have to enter a plea of guilty, you may go to trial, that is your right.

But there is a possibility—there is a plea bargain out there which you could accept and then enter a plea of guilty, or you could say no, I don't want to do that; and that's fine, we will go to trial on the 27th at 1:30 as we had planned.

So, can you tell me today what is your decision? Do you want to enter a plea of guilty or not?

The Defendant: No, ma'am. I would like to go to trial.

The Court: You want to go to trial. Okay. All right. Fine.

Ms. Zack: Your Honor, the only other caveat that the government has is I just want it to be made very clear that if Mr. Benjamin goes to trial, that at sentencing the United States will be seeking all of the possible enhancements and all of this, and there is no—he can't come back and say I went to trial because I was influenced by this or I went to trial because of this. There is no excuse. Once he is adjudicated guilty by a jury, that's it, game over, and the Court does not consider what his reasons for going to trial were or whether he was unduly influenced to go to trial. It's game over at that point.

And we just want to make sure that he understands the offer that we have offered is done. We will be going forward on the forced fraud or coercion count. In as much as the other two counts, that he will be accountable to that under the guidelines, which raises his base level. There will be no acceptance. There potentially could be obstruction and other enhancements that will apply that would not apply if he were to take this plea.

The Court: Do you understand that, Mr. Benjamin?

The Defendant: Yes, ma'am.

The Court: I mean, you know, if you go to trial, of course, the jury could either find you guilty or not guilty.  If the jury found you guilty, you would face all of the consequences of being found guilty.

If the jury found you not guilty, of course, there would be no consequences except that you would be found not guilty and you could leave the courtroom, leave the building, but that's up to the jury.

But this plea bargain, as all plea bargains, gives you certain breaks, but the down side is you have to plead guilty to get those breaks.  Do you understand that?

The Defendant: Yes, ma'am.

(Document No. 109, p. 2-5).

The record shows that Benjamin, upon further reflection, pleaded guilty to Counts 1 and 2 pursuant to a written Rule 11(c)(1)(A) Plea Agreement on March 24, 2017.  (Document No. 45; Transcript of Rearraignment, Document No. 105). The written Plea Agreement is signed by Benjamin and was thoroughly discussed at the Rearraignment.  The signed written Plea Agreement makes clear that Benjamin "is pleading guilty freely and voluntarily because he is guilty" (Document No. 45, ¶ 27), and contains an Addendum, also signed by Benjamin, that states that he: "consulted with my attorney and fully understand all my rights with respect to the Superseding [Indictment] pending against me.  My attorney has fully explained, and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.  I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms."  (Document No. 45, p. 17). Moreover, the transcript of the Rearraignment hearing confirms that Benjamin understood the general terms of the plea agreement, the charges against him, the elements of the crimes, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, and in

particular, the guidelines, that he had discussed the plea agreement with his attorney and that he understood the terms, and that he was waiving both his right to appeal and to collateral review except for claims of ineffective assistance of counsel. (Document No.105, p. 4-17).          T h e record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial.  (Document No. 105, p. 17-21).   In response, Benjamin confirmed the accuracy of the summary and his role in the offense. (Document No.105, p. 22)  The Prosecutor summarized the facts as follows:

> Ms. Zack: Your Honor, if the United States were to proceed to trial, the United States would show that between March 1st and March 31 of 2016, the defendant Antonio Benjamin with an individual whose initials were C.T. when he met Minor Victim 1; that Minor Victim 1 has a date of birth of 9/1/98; that they were at a Motel 6 near South Main in Houston; that the defendant, who knew where they were, showed up to take Minor Victim 1 to high school; that Minor Victim 1 was interviewed and reported that she felt obligated to live with or be supported by the defendant because she had been kicked out of her mother's house.

> Minor Victim 1 indicated that she felt that she had to prostitue for the defendant; that she averaged two prostitution dates a night; that he promised her a lavish lifestyle filled with cars and riches, and she was with him for the month of March of 2016. During that time Minor Victim 1 would testify that she gave all her money earned from commercial sex to the defendant.

> Minor Victim 1 indicated that she was taught how to communicate with the customers; that the defendant instructed her on how to do that and that he knew her age.

> During that time that this was going on the defendant would sit next to Minor Victim 1 and instruct her on what to say to the customers on the phone.  He'd get the money first and make sure that the customers used condoms; that if a customer became hostile, to call him and that to call him when the date was over.

> She does not know how he got the customers, and she indicated that she worked every day while she was with him, and she was instructed to charge $200 for an hour and $120 for a half hour for a commercial sex date.

> That the defendant instructed her to send photos of herself to him.  Those photos ads posted on backpage.com, which is a known area for prostitution on the internet; that Minor Victim 1 would testify that she gave us two cell phone numbers and that he contacted her on both those numbers.

On more than one occasion she would testify he left her stranded in parts of town she was unfamiliar with.  And when that happened, she would remind him of her age, which was 17, and asked him not to leave her stranded.

We have hotel records to confirm that the defendant rented a room from March 6th to March 7th at the Motel 6 at 3223 South Loop West.  There are also receipts with the defendant's name on them from February of 2016.

The defendant's phone was seized when he was arrested on the criminal complaint, and it was searched pursuant to a federal search warrant.  And prior to that the defendant, we obtained Instagram and Twitter account messages of the defendant that are indicative of sex trafficking.

That the defendant was, when he was arrested, he agreed to speak with law enforcement after he was advised of his Miranda warnings.  He talked about renting hotel rooms, including the Motel 6 mentioned above.  He admitted to speaking to Minor Victim 1 and claimed that he heard she "hit licks," which is a term for prostitution.

He stated that he knew she attended high school and acknowledged that she was a minor.  He stated that C.T. was his girlfriend and that C.T. and he would transport women to and from strip clubs for money.  He stated some of the girls worked as strippers and prostitutes for him.

There are backpage ads, as we discussed, with minor, images of Minor Victim 1 posted during the time period that corresponds with the indictment.  And when the defendant's phone was analyzed, it contained numerous incriminating texts about prostitution.

Minor Victim 2, whose birth date is 12/31/98, was interviewed by the FBI and corroborated the information given by C.T. and Minor Victim 1.  Minor Victim 2 also told Special Agent Williams that when she met Benjamin she told him that she was 17 years old and he did not care about her age is what she stated.

Minor Victim 2 further stated that she and several other females stripped in clubs for the defendant.  She stated that if they didn't make a certain quota a night there were consequences.  She indicated that defendant was grooming her for commercial sex and that she was giving the money from stripping to him.

She also stated that he solicited her to engage in commercial sex but she refused.  She told Special Agent Williams that the defendant wanted her to be his "bottom bitch," which in the parlance of prostitution means his top girl; that Minor Victim 2 explained that if she were to agree to that, that what Benjamin told her is that she would have to have sex with him, that she would control the activity of the girls working for him and only communicate with him.

> She also indicated that the defendant is a rapper of sorts and posts images of his music online on Instagram and on Twitter.
>
> These ads that were posted for Minor Victim 1 created access to interstate commerce as the internet is a means and facility of interstate commerce.  Communications between Minor Victim 1 and the defendant and Minor Victim 2 and the defendant via cell phone and the internet also create a nexus.  And the motel used by the defendant to harbor or maintain the victim are a means and facility of interstate commerce.
>
> And based on all information between Minor Victim 1 and Minor Victim 2, the ads, the hotel receipts and the defendant's admissions, the United States would demonstrate the defendant knew that the victims were under age and that the defendant had a reasonable opportunity to observe them and that during that he harbored, transported or maintained them knowing that they would engage in commercial sex or that they would eventually be caused to engage in commercial sex.

(Document No.76, p. 30-35).  The record further shows that Benjamin confirmed his role in the

offense as follows:

> The Court: All right.  Mr. Benjamin, how do you—can you explain to me, please, in your own words what it is you did to commit the crime to which you are pleading guilty this morning.
>
> The Defendant: I mean, I knew about everything.
>
> The Court: Pretty much what Ms. Zack said she thinks she could prove against you?
>
> The Defendant: Yes.
>
> The Court: Is that what you did?
>
> The Defendant: Yes, ma'am.

(Document No.105, p.21-22).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared.  (Document

Nos. 51, 52). Benjamin filed written objections to the PSR (Document No.47).[2]  With a combined

---

[2] The record shows that Benjamin raised several objections to  calculation of his advisory guideline sentence. Benjamin objected to the five level increase to his base offense level under U.S.S.G. § 4B1.5(b)(1).  Benjamin argued that the underlying conduct regarding Minor Victim 2

adjusted offense level of 38, and a downward adjustment of three levels for acceptance of responsibility, Benjamin had a total offense level of 35.  Because he was deemed a repeat and dangerous sex offender against minors within the meaning of U.S.S.G. § 4B1.5, his offense level was increased by five levels.  With an offense level of 40, and with a criminal history category of III, Benjamin had an advisory guideline sentencing range of 360 months to life. The record reflects that prior to sentencing, Benjamin submitted a Sentencing Variance Memorandum, in which he argued for a sentence less than his advisory guideline range. Benjamin argued that there was only one victim, Minor Victim 1 because Minor Victor 2 never agreed to perform any sex acts with him, including prostitution.  He further argued that C.T. was a prostitute and was equally involved in the sex trafficking activities alleged yet not charged. He further argued that he never assaulted C.T. and also  denied threatening, beating, or having sexual intercourse with either minor victim. Lastly, Benjamin argued that his criminal history overstated his criminal history.

On September 15, 2017, Benjamin was sentenced to a total term of imprisonment of 360 months, to be followed by ten year concurrent terms of supervised release, and a $200.00 special assessment. In imposing Benjamin's sentence, the Court stated, in pertinent part:

> Antonio Rasheed Benjamin, is before the Court for sentencing after pleading guilty to two counts of sex trafficking of minors pursuant to a written Rule 11(c)(1)(A) plea agreement.
>
> The investigation revealed that from December 2014 through March 2016, the defendant used physical violence and threats of violence to force or attempt to force

---

did not constitute a sexual offense.  He further objected to the four level increase based on criminal sexual abuse.  He further denied the allegations of violence, serious bodily injury, or sexual abuse made against him by Minor Victim 1, Minor Victim 2 and C.T.  Benjamin objected to the enhancement under U.S.S.G. § 2A3.1(b)(6)(B) for use of a computer.  Benjamin also argued that the PSR double counted his offenses, and that the PSR violated the Due Process Clause of the United States Constitution.  The Probation office responded (Document No. 52). The Probation Office concurred with Benjamin's arguments that U.S.S.G. § 2A3.1(b))4)(B) did not apply.  (Document No. 52).

Minor Victim One, Minor Victim Two, and adult victim — and an adult victim to engage in commercial sex acts.  He acted as the juvenile pimps—juveniles' pimp exercising control of Minor Victim One and forcing her to engage in commercial sex acts with the threat of death or serious bodily injury and the actual use of physical violence towards Minor Victim One, Minor Victim Two, and the adult victim.

He retained all of the proceeds of commercial sex performed by Minor Victim One and the adult victim, and he controlled the other Minor Victim Two.

He has prior adult convictions for possession of marijuana and theft, two convictions.

He has reported a history of part-time employment working at concession stands at Minute Maid Park through a business owned and operated by his aunt.  He has reported daily use of marijuana, alcohol, ecstasy and Xanax since the age of 17.

I believe that the guideline calculation in this case adequately accounts for the defendant's conduct in this offense and that a sentence at the low end of the applicable guideline range is appropriate, together with a ten-year term of supervised release, to allow the probation office to monitor his reintegration into the community upon his release from imprisonment and to assist him through referrals to community-based programs to address his substance abuse issues.  The determination to restitution has not been made as of the date of the presentence report.  The probation office did not receive responses from the two identified victims to date.  A 100-dollar special assessment and a 5,000 dollar Justice for Victims of Trafficking Act assessment are mandated for each count of conviction by statute.

The investigation revealed that Mr. Benjamin does not appear to have sufficient assets to pay the total of $10,000 Justice for Victims of Trafficking Act assessment or a fine within the advisory guideline range.  And the fine and the Juvenile Victims of Trafficking Act assessments under 18, United States Code, Section 3014 will be waived.

(Document No. 92, p.38-40).  Judgment was entered on September 19, 2017.  (Document No. 56).

Benjamin appealed to the Fifth Circuit United States Court of Appeal.  The Fifth Circuit dismissed

the appeal as frivolous.  (Document No. 119).  Benjamin did not seek *certiorari* view in the United

States Supreme Court.  His conviction became final on January 15, 2019.  On August 13, 2019,

Benjamin timely filed the instant § 2255 motion.  (Document No. 120).

## II.  Discussion

The gist of Benjamin's § 2255 motion is that his guilty plea was not knowing and voluntary

because he believed that by pleading guilty there would be no sentencing enhancements and that the Government broke an "implied" promise by arguing in favor of the enhancements at sentencing. Benjamin contends that the AUSA promised at his Rearraignment that he was not pleading to force yet his guideline sentence range was increased based on enhancements involving force and that as a result, the Court imposed a draconian sentence of thirty years, when Benjamin believed he would be sentenced to no more than ten years. Benjamin further contends that counsel was "sitting on his hands" and failed to move to withdraw his guilty plea at sentencing when it became apparent the government was going to allow the court to impose such a draconian sentence. Benjamin contends that counsel was ineffective for failing to object to the calculation of his guideline sentence, and that his appellate counsel was ineffective for failing to challenge the calculation of his sentence on direct appeal. (Document No. 121, p. 10). According to Benjamin, his sentencing exposure should have been limited to allegations in the Criminal Complaint, i.e, Minor Victim 1 and not on conduct relating to Minor Victim 2 or C.T. The Government has responded and argues that Benjamin's claims fail as a matter of law. The Magistrate Judge agrees.

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of a § 2255 motion). The Fifth Circuit has held that a § 2255 waiver does not preclude review where there is an ineffective assistance of counsel claim where the claimed ineffective assistance directly affected the validity of the waiver in the plea itself. *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). The Fifth Circuit has further held that a § 2255 waiver does not preclude a review where there is a claim that the sentence exceeds the statutory maximum. *United States v.*

*Hollins*, 97 Fed. App'x 477, 479 (5th Cir. 2004). In the context of the plea agreement, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005). "[T]he better practice is to ask expressly if the defendant read and understood the plea agreement." *United States v. Narvaez*, 452 Fed. App'x 488, 492 (5th Cir. 2011). Because Benjamin is proceeding pro se, this Court should review his claims liberally and "hold [his pleadings] to less stringent standards than formal pleadings by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, he "may not collaterally attack his voluntary and intelligent guilty plea." *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991).

To be valid, a guilty plea needs to be both knowing and voluntary, *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986), which means that "a defendant must have full knowledge of what the plea connoted and of its consequences." *United States v. Lord*, 915 F.3d 1009, 1016 (5th Cir. 2019) (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *Lord*, 915 F.3d at 1016 (quoting *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "An accused's mere 'understanding' that he will [receive] a lesser sentence . . . will not invalidate a guilty plea." *Smith*, 786 F.2d at 701 (citing *Self v. Blackburn*, 751 F.2d 789, 792-93 (5th Cir. 1985); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)). However, "w[h]ere an *actual promise* has been made . . ., federal habeas relief is awardable if the petitioner 'prove[s] "(1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise."'" *Id.*

(quoting *Self*, 752 F.2d at 793 (quoting *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir. 1983))).

Benjamin's "prior attestation of voluntariness is not an absolute bar to his contestations here,

although it imposes on him a 'heavy burden.'" *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir.

1979) (quoting *Barnes v. United States*, 579 F.2d 364 (5th Cir. 1978)). Benjamin "must show that

his plea was 'so much the product of . . . misunderstanding, duress, or misrepresentation by others

as to make the guilty plea a constitutionally inadequate basis for imprisonment." *United States v.*

*Diaz*, 733 F.2d 371, 374 (5th Cir. 1984) (quoting *Blackledge*, 431 U.S. at 75).

Here, by signing the plea agreement (Document No. 45, p. 15) and the Addendum (Document

No. 45, p. 17), Benjamin acknowledged and agreed to the following: he was informed of the facts

that led to the charges in the first place (Document No. 45, p. 7-11); he knew he was waiving his

right to appeal or collaterally attack his conviction and sentence, but was not waiving his right to

raise a claim of ineffective assistance of counsel (Document No. 44, p. 3-4); and he knew that a

sentence had not been determined by the Court, that any estimate of the possible sentencing range

under the sentencing guidelines that he may have received from his counsel, the United States, or

the Probation Office was a prediction and not a promise and that it did not induce his guilty plea.

(Document No. 45, p. 3); he knew the rights he was surrendering (Document No. 45, p. 6); he

acknowledged that no promises were made to him by the Government, other than those in the plea

agreement (Document No. 45, p. 15); and he acknowledged that he consulted with his attorney, that

he fully understood the agreement and his rights, and that he freely plead guilty and voluntarily

signed the agreement (Document No. 45, p. 17). The signed Plea Agreement shows that Benjamin

had full knowledge of what the plea entailed and its consequences, and that no enhancements had

been waived. *See Lord*, 915 F.3d at 1016.

Furthermore, at his Rearraignment Hearing, the Government made clear that Benjamin was

pleading guilty to 18 U.S.C. § 1591(a) and (b)(1), thereby limiting the mandatory minimum sentence to ten years. (Document No. 105, p. 5).  Benjamin testified to the following: that he discussed the Second Superceding Indictment with his counsel and was fully satisfied with his counsel's advice and representation, that he understood what he agreed to in the written Plea Agreement, that the written Plea Agreement contained all the promises or assurances that had been made to him that persuaded him to plead guilty, that he was not forced or coerced to plead guilty, and that he plead guilty because he was guilty. (Document No. 105, p. 4, 6-8). The Court also went over the maximum penalties Benjamin was facing, the essential elements of the crime, and the rights he was waiving, all of which he solemnly declared that he understood. (Document No. 105, p. 8-11, 13-17). Benjamin's claim that he believed there would be no enhancements and that he would not receive such a draconian sentence, is undermined by the contemporaneous record.  *See Smith*, 786 F.2d at 701.  The record shows that he solemnly declared that he understood "the nature of the constitutional protection[s] that he [was] waiving" and that he fully understood "the charges against him." *See Lord*, 915 F.3d at 1016; *Blackledge*, 431 U.S. at 74. Benjamin was advised that a presentence report would be prepared, and that the Court could not tell what him sentence would be, but that parties would be given the opportunity at sentencing to make any objections to the presentence report. (Document No. 105, p. 11-13).  Given his sworn statements that he was not induced to sign the guilty plea on the premise that, by doing so, he would receive a sentence of no more than ten years, and there would be no enhancements, his claim that his plea was not knowing and voluntary fails, and his claim is barred by his waiver of his right to collaterally attack his conviction.  Likewise, Benjamin's claim that the prosecutor "maliciously superseded the Indictment" and made threats at the March 21, 2017, hearing, is refuted by the record.  (Document No. 121, p. 10).

      First, Benjamin's argument that he could not be charged for any conduct not alleged in the

Criminal Complaint or Original Indictment is contrary to law.   A prosecutor has discretion in deciding whether to prosecute and what charges to bring.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). As the Supreme Court in *United States v. Goodwin*, 457 U.S. 368, 382 (1982) observed that  "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution."

Benjamin also argues that the prosecutor added charges relating to Minor Victim 2 and C.T., to punish him for wanting to go to trial.  To prove a claim of vindictiveness, a defendant may (1) show actual vindictiveness by presenting objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights, or (2) show sufficient facts to create a presumption of vindictiveness.  *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Benjamin has failed to meet this standard.  Benjamin alleges that the prosecutor was vindictive at the March 21, 2017, hearing.  However, the comment that Benjamin relies upon was consistent with what he had been advised by counsel, and   Benjamin confirmed his understanding that he had discussed enhancements, and that he was aware that the Court would determine his sentence and that it was possible his sentence could be more than the applicable mandatory minimum but there was a chance it could be less.  (Document No. 109, p. 2-3).   Benjamin does not allege that the Government's decision to prosecute him was based on some improper reason.  He does not allege that he was prosecuted to punish him for asserting a legal right, and he does not allege facts that show any vindictiveness by the Government in deciding which charges to bring against him.  Rather, his arguments relate to the calculation of his guideline sentence.  Notwithstanding Benjamin's belief that all enhancements had been waived, the record shows Benjamin was aware that enhancements had not been waived.  At his Rearraignment, he unequivocally stated that no promises had been made that were not included in the written Plea Agreement.  Benjamin's declarations in open court

carry a strong presumption of verity.  *See United States v. Perez*, 690 Fed. Appx 191, 192 (5th Cir. 2017)(citing to *Blackledge*, 431 U.S. at 74)..

To the extent that Benjamin argues that the information in the PSR was inaccurate and unreliable about the Minor Victim and C.T., such as his lacing minor victim 2's cigarette with a drug to render her unconscious so he could have sex, and that the enhancements did not apply, the law is clear that a presentence report "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007).  Other than Benjamin's self-serving statements about his role in the offense, Benjamin has failed to rebut, or show unreliable the PSR's statements that were adopted by the Court.  Moreover, challenges the court's application of the sentencing guidelines are not cognizable in a § 2255 proceeding. *See, e.g., United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  And even if challenges to the court's application of the sentencing guidelines were cognizable in a § 2255 motion, Benjamin raised the arguments relating to the calculation of his guideline sentence in his response to the *Anders* Brief that had been filed by appellate counsel.  Both Benjamin's response and *Anders* brief were considered by the Fifth Circuit.  The Fifth Circuit Court of Appeals agreed with counsel's conclusion that Benjamin's appeal presented no nonfrivolous issues for appellate review.  Because Benjamin's challenge to the calculation of his guideline sentence was litigated on direct appeal, he is foreclosed from re-litigating them in the instant § 2255 proceeding.  *See United States v.* Webster, 392 F.3d 787, 791 & n.5 (5th Cir. 2004); Resendez-Gonzalez *v. United States*, Civ. No. 3:17-CV-261, 2018 WL 278675, at *2 (S.D. Tex. Jan. 3, 2018)(rejecting § 2255 movant's claims because *Anders* brief revealed claims were frivolous, and Fifth Circuit agrees with *Anders* brief assessment).

Upon this record, even if Benjamin had not waived his right to file a § 2255 motion, his

claims that the prosecutor was vindictive in seeking enhancements and his challenge to the court's application of the sentencing guidelines fail as a matter of law.

Benjamin also raises claims of ineffective assistance of counsel. The Government has responded and argues that counsel's performance did not fall below that of *Strickland v. Washington,* 466 U.S. 668 (1984). The Magistrate Judge agrees.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that the Sixth amendment right to counsel extends to the plea-bargaining process. The Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Id.* at 58. With respect to the prejudice inquiry in the guilty plea context, the Supreme Court in *Hill* opined that a defendant must show"that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162-63. During the 2017 term, the Supreme Court in *Lee v. United States*, ___U.S.___, 137 S.Ct. 1958, 1966 (2017), instructed that such a review should be "a case-by-case examination of the

totality of the evidence" and to look at contemporaneous evidence. *Id*. at 1966. The Supreme

Court wrote:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed. 2d 634 (1979). Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Id.* at 1967.

"We will not find inadequate representation merely because, with the benefit of hindsight,

we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir.

1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of

ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition.

*Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard*

*v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to ineffective assistance of counsel claims, the Court in *Harrington v. Richter*, 562

U.S 86, 131 S.Ct. 770, 778 (2011) observed that "[t]here are, [ ] 'countless ways to provide effective

assistance in any given case. Even the best criminal defense attorneys would not defend a particular

client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in

making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting

from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that

guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that

was reasonable at the time and balanced limited resources with effective trial tactics and strategies.

*Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a

flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack

of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791 (emphasis added).

Benjamin alleges that counsel was ineffective for "sitting on his hands" when it became apparent that the Government was seeking to enhance his sentence. The record controverts Benjamin's assertion that counsel failed to object to the PSR and was ineffective for failing to "defend" him at sentencing. Counsel filed written objections to the PSR and argued against the enhancements at sentencing. In addition, counsel filed a sentencing memorandum. Counsel successfully objected to the enhancement for serious bodily injury under U.S.S.G. § 2A3.1(b)(4)(B). Benjamin confirmed at sentencing that he had read and understood the PSR and that he had no other objections to the PSR than those raised by counsel. The contemporaneous record shows that counsel made *all* the arguments urged by Benjamin. Simply because the Court was unpersuaded by the arguments raised by counsel concerning the enhancements, does not mean that counsel's performance was deficient within the meaning of *Strickland. Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983). In addition, it is well-settled that appellate counsel is not ineffective for failing to raise every non-frivolous issue. *See Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998)("On appeal, effective assistance of counsel does no t mean counsel who will raise every non-frivolous ground on appeal available."). Here, the *Anders* brief shows that counsel found no error in the Court's guideline calculation. Because Benjamin's appellate counsel made an informed, strategic decision not to challenge the enhancements on direct appeal, his ineffectiveness of appeal counsel claim fails.

Benjamin's contention that counsel was ineffective for  failing to move to withdraw his

guilty plea prior to sentencing likewise fails.  The Fifth Circuit has held that a defendant does not have a right to withdraw his guilty plea for any reason or no reason at all once the district court accepts the guilty plea.  *See United States v. Harrison*, 777 F.3d 227, 231 (5th Cir. 2015).  Factors the court considers in considering whether a defendant should be allowed with withdraw a guilty plea prior to sentencing include (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.  *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).  Benjamin was advised about the sentencing process and that he could not withdraw his guilty plea if unhappy with his sentence.  Benjamin unequivocally stated that no promises had been made that were not included in the written Plea Agreement.  Benjamin has not shown that he had a "fair and just reason" to request to withdrawal of his guilty plea. Fed.R.Crim. P. 11(d)(2).  As such, counsel was not ineffective for failing to advise him that he could move to withdraw his guilty plea prior to sentencing.  *See Bazemore v. United States*, Nos. 3:10-CV-0027-K, 3:07-CR-312-K(01), 2010 WL 4860783, at *5 (N.D. Tex. Nov. 29, 2010)(finding that counsel was not deficient for refusing to file a meritless motion to withdraw guilty plea). Benjamin's ineffectiveness of counsel claims fails as a matter of law.

Finally, Benjamin has moved to amend his § 2255 Motion to respond to the Government's Motion for Summary Judgment but fails to provide *any* specific details about his new claims. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted. Pursuant to § 2255(f), the one-year limitation period begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Benjamin filed the instant § 2255 motion after the effective date of AEDPA, the provisions of the statute apply. Benjamin's motion was seven months after the expiration of the one-year limitations period. Under these circumstances, Benjamin's motion is untimely under § 2255(f)(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(4) or that the limitations period should be equitably tolled.

As for the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4), none applies. Benjamin has not alleged that he was in any way impeded including new unspecified claims in his timely filed § 2255 motion.

Furthermore, upon this record Benjamin has not shown that the limitations period should be equitably tolled. The law is clear that only rare and exceptional circumstances may warrant the application of equitable tolling principles to an untimely filed claims under § 2255 Motion to Vacate, Set Aside or Correct Sentence. *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Equitable tolling, however, is not available if the Movant does not act diligently in attempting to meet the one year limitations deadline. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Additionally, the Fifth Circuit has approved the application of equitable tolling in very

limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his right.'" *Fierro* v. *Cockrell*, 294 F.3d 674, 682 (5th  Cir. 2002)(quoting *Coleman*, 184 F.3d at 402.  The Fifth had disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect." *Lockingbill v. Cockrell*, 239 F.3d 256, 265 (5th Cir. 2002).   The Movant must show "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented a timely filing.'" *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010)(quoting *Pace v. DiGugielmo*, 544 U.S. 408, 418); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Given the absence of any facts in the record which would constitute rare and exceptional circumstances, equitable tolling of the limitations period is not applicable.

Because Benjamin's motion was not timely filed and because there are no grounds available to toll the limitations period, his motion should be denied as time-barred.

## III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Antonio Rasheed Benjamin's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 120) and Motion to Amend (Document NO. 132) be DENIED. It is

ORDERED that Movant's Motion for Extension of Time (Document No. 131), and Motion to Amend § 2255 Motion (Document No. 132) is DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D.

Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 20th day of April, 2021.

Frances H. Stacy
United States Magistrate Judge